1

2

3

4                                UNITED STATES DISTRICT COURT

5                              NORTHERN DISTRICT OF CALIFORNIA

6

7     M.P.,                                    Case No.  21-cv-03632-SVK

8                     Plaintiff,

9            v.                                **ORDER ON CROSS-MOTIONS FOR
                                               SUMMARY JUDGMENT**
10    KILOLO KIJAKAZI, [1]
                                               Re: Dkt. Nos. 15, 17
11                    Defendant.

12

13           Plaintiff appeals from the final decision of the Commissioner of Social Security, which

14    denied Plaintiff's application for disability benefits.  The parties have consented to the jurisdiction

15    of a magistrate judge.  Dkt. 2, 10.  For the reasons discussed below, the Court GRANTS IN PART

16    AND DENIES IN PART Plaintiff's motion for summary judgment (Dkt. 15) and DENIES

17    Defendant Commissioner's cross-motion for summary judgment (Dkt. 17).

18    **I.     BACKGROUND**

19           On January 1, 2019, Plaintiff filed an application for Title II disability benefits, alleging a

20    December 12, 2018 onset date.  See Dkt. 14 (Administrative Record ("AR") 70).  After an August

21    18, 2020 hearing, an administrative law judge ("ALJ") issued a decision on November 2, 2020,

22    finding that Plaintiff was not disabled.  AR 70-80.  The ALJ determined Plaintiff had the

23    following severe impairments:  coronary artery disease, status post-cardiac catheterization in

24    November 2017, percutaneous coronary intervention or "PCI," of the mid-LAD with placement of

25    drug-eluting stent with no residual stenosis, and right shoulder impingement syndrome with

26    rotator cuff tear and tendinitis.  AR 72.  The ALJ also found that Plaintiff suffered from the

27    ───────────────────────
      [1] Kilolo Kijakazi became Acting Commissioner while this case was pending and is therefore
28    automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

*United States District Court*
*Northern District of California*

medically determinable impairments of Hashimoto's thyroiditis, hypertension, and degenerative disease of the cervical and lumbar spine, but that they were not severe. AR 73. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") was as follows:

> [Claimant] has the [RFC] to perform work consisting of the ability to lift [twenty-five] pounds occasionally; lift and carry [twenty] pounds frequently; can stand and walk [six] out of [eight] hours; can do no more than frequent stooping and frequent climbing of ladders, ropes, and scaffolds. With the right upper extremity: she has a maximum lifting capacity of [ten] pounds; can perform occasional overhead reaching, and all other reaching frequently.

AR 74. The ALJ ultimately concluded Plaintiff was not disabled because she could perform her past relevant work as a unit clerk. AR 79.

After the Appeals Council denied review, Plaintiff filed this action challenging the ALJ's decision. Dkt. 1 (Complaint). In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment (Dkt. 15, 17), which are now ready for decision without oral argument.

## II.     ISSUES

1.    Did the ALJ err in evaluating the medical opinions of Drs. Sackett and Rudito?

2.    Did the ALJ err in discrediting Plaintiff's daughter's testimony?

3.    Is Plaintiff entitled to a new hearing before a new ALJ pursuant to *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2197 (2020)? [2]

## III.    STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence

---

[2] Plaintiff advanced an additional argument for reassignment to a new ALJ on remand, which the Court addresses in its conclusion.

United States District Court
Northern District of California

or if it is based on the application of improper legal standards. *Id.* at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

## IV.    DISCUSSION

### A.    Issue One:  ALJ's Evaluation of the Medical Opinions of Treating Physician, Dr. Sackett, and State Agency Consulting Physician, Dr. Rudito

Plaintiff saw Dr. Sackett regularly, and, as a result, the record contains multiple opinions and findings from Dr. Sackett. The ALJ noted several of those opinions in the decision. AR 78. However, the opinion at issue is Dr. Sackett's operative RFC opinion from December 12, 2018 ("RFC opinion"), in which Dr. Sackett made permanent the work restrictions she had previously ordered in September and October 2018. AR 303, 323, 325.[3] Plaintiff argues that the ALJ erred

---

[3] Dr. Sackett reiterated that RFC opinion in Plaintiff's March 28, 2019 visit records as well. AR 494. Additionally, Dr. Siqueiros, Dr. Navani, and Nurse Practitioner ("NP") Kwan adopted the

1    when she failed to assign persuasive weight to Plaintiff's treating physician, Dr. Sackett's RFC

2    opinion regarding her shoulder impairments, instead adopting the opinion of non-examining state

3    agency medical consultant, Dr. Rudito.

4          In adopting state agency consulting physician Dr. Rudito's opinion as Plaintiff's RFC, the

5    ALJ concluded that Dr. Rudito's opinion was "consistent with other diagnostic and clinical

6    evidence such as the normal and stable labs and the grossly normal examinations performed by

7    other providers that show, for example, decreased range of motion in the right shoulder but normal

8    5/5 strength throughout all extremities."  AR 77 (citing AR 285-87, 301, 311, 496, 526-21, 613,

9    767, 797-98); AR 60-64 (Dr. Rudito's opinion).  By contrast, the ALJ found treating physician Dr.

10    Sackett's RFC opinion "less persuasive due to a lack of supportability and consistency with the

11    longitudinal evidence and internal inconsistencies."  AR 78.  The ALJ cited the following records

12    as support for the alleged lack of internal support and consistency between Dr. Sackett's RFC

13    opinion and her notes or records:  (1) Dr. Sackett's March 2019 notation that Plaintiff "had no

14    work restrictions" and that she was feeling better, taking no medications for the right shoulder

15    injury, and continuing her home exercise program; and (2) Dr. Sackett's June 2018 statement that

16    Plaintiff had no work restrictions and was able to return to full work duty.  AR 78.  The ALJ

17    further found that Dr. Sackett's RFC opinion was inconsistent with the longitudinal medical

18    evidence, which "did not show a worsening of conditions since examinations show stable and

19    regular findings related to musculoskeletal and neurologic findings, despite reduced range of

20    motion and tenderness."  AR 78.  In support, the ALJ cited to the same medical evidence she cited

21    to in support of the finding that Dr. Rudito's opinion was persuasive.  AR 78 (citing AR 285-87,

22    301, 311, 496, 526-21, 613, 767, 797-98).

23          At the outset, Plaintiff disputes the legal standards that apply to medical opinions, arguing

24    that the ALJ was required to provide "specific and legitimate" reasons for discounting Dr.

25    Sackett's RFC opinion despite the agency's 2017 revisions to the regulations regarding the

26

27    same restrictions in their 2019 and 2020 RFC opinions.  *See* AR 535-36, 817, 793.  The most
recent RFC opinion in the record is contained in the June 25, 2020 progress notes of NP Kwan

28    from the Comprehensive Spine Sports Center ("Spine Center"), in which NP Kwan adopts the
restrictions proffered by Dr. Sackett in December 2018.  AR 793.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    evaluation of medical evidence that suggest otherwise.  *See* Revisions to Rules Regarding the

2    Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at

3    5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. § 416.920c(a) (new regulations provide that the

4    Commissioner "will no longer give any specific evidentiary weight to medical opinions; this

5    includes giving controlling weight to any medical opinion"); *cf. Trevizo v. Berryhill*, 871 F.3d 664,

6    675 (9th Cir. 2017) ("If a treating or examining doctor's opinion is contradicted by another

7    doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are

8    supported by substantial evidence.").  The Ninth Circuit recently held otherwise, though,

9    concluding that the new regulations "displace [the Ninth Circuit's] longstanding case law"

10   requiring an ALJ to articulate "specific and legitimate reasons" for rejecting a treating physician's

11   opinion where the opinion is contradicted by other medical opinions.  *Woods v. Kijakazi,* No. 21-

12   35458, --F.4th--, 2022 WL 1195334, at *1, 3-4 (9th Cir. April 22, 2022).  Accordingly, the ALJ

13   here was not required to provide "specific and legitimate" reasons for rejecting Plaintiff's treating

14   physicians' opinions.

15          Instead, under the new regulations, the ALJ was required to consider all medical opinions

16   and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2)

17   consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors."  20 C.F.R.

18   § 416.920c(a)-(c).  The two "most important factors for determining the persuasiveness of medical

19   opinions are consistency and supportability," and the ALJ is required to explicitly address

20   supportability and consistency in their decision.  Revisions to Rules, 82 Fed. Reg. 5844-01 at

21   5853; 20 C.F.R. § 404.1520c(b)(2); *see also Woods*, 2022 WL 1195334, at *1.  As with all other

22   determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by

23   substantial evidence.  *See Woods,* 2022 WL 1195334, at *1; *see also Patricia F. v. Saul*, No. C19-

24   5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020) (citing 82 Fed. Reg. at 5852)

25   (finding that, under the new regulations, "[t]he Court must . . . continue to consider whether the

26   ALJ's analysis has the support of substantial evidence").

27                  **1.      Dr. Sackett's Opinion**

28          As noted, the ALJ proffered three reasons in support of the conclusion that Dr. Sackett's

1   opinion was "less persuasive due to a lack of supportability and consistency with the longitudinal

2   evidence and internal inconsistencies."  AR 78.

3         First, the ALJ found that Dr. Sackett's RFC opinion was unsupported by and internally

4   inconsistent with Dr. Sackett's other records, citing to a June 2018 visit in which Dr. Sackett

5   authorized Plaintiff to return to full-time work, and to a March 2019 visit during which Dr. Sackett

6   reported that Plaintiff was feeling better.  AR 78, 485-87, 333-35 (June 21, 2018 visit); AR 494-95

7   (March 28, 2019 visit).  However, neither record supports the ALJ's supportability and consistency

8   findings.  Instead, Dr. Sackett's varying findings and opinions from June 2018 to December 2018,

9   and then from December 2018 to March 2019, mirror the fluctuations regularly associated with

10  Plaintiff's shoulder impairment and related symptoms over the years. [4]  Plaintiff's shoulder

11  impairment and symptoms routinely see-sawed based in part on how much Plaintiff was working

12  and the impact of Plaintiff's work on her injury.  *See, e.g.,* AR 286, 383 (noting 2017 flare-up due

13  to workload); AR 356 ("pain, pinching sensation, tightness in shoulder, and burning sensation in

14  both hands" increased after return to work); AR 359 (reporting some improvement in her right

15  shoulder mobility and in her pain during the period that she was off work or on modified leave in

16  2017 through early 2018).  Dr. Sackett's RFC opinion – and her opinions over time – corresponded

17  with the changes in Plaintiff's condition.

18        The ALJ further found that Dr. Sackett's opinion was not supported by and was

19  inconsistent with "the longitudinal medical evidence that [did] not show a worsening of conditions

20  since examinations show stable and regular findings related to musculoskeletal and neurologic

21  findings, despite reduced range of motion and tenderness."  AR 78.  However, the work limitations

22  opined to by Dr. Sackett were in fact consistent with those of every other treating physician in the

23  record – including Dr. Siqueiros, Plaintiff's primary care physician, and Dr. Navani and NP Kwan

24  from the Spine Center.  AR 303 (Dr. Sackett); AR 535-36 (Dr. Siqueiros' July 2019 RFC

25  questionnaire); AR 817 (Dr. Navani's December 2019 work restrictions); AR 793 (NP Kwan's

26

27  ─────────────────
    [4] In support of her rejection of Dr. Sackett's work limitations, the ALJ mistakenly asserted that Dr.
28  Sackett found that Plaintiff "had no work restrictions" in March 2019.  AR 78.  Dr. Sackett's notes
    actually reflect that she reiterated that Plaintiff was "placed on permanent modified work/activity"
    consistent with the limitations in her December 2018 opinion.  AR 495.

June 2020 work restrictions).[5]  The ALJ's selective citations to several findings from Plaintiff's

visits to her cardiologists and to her primary care physician for care unrelated to Plaintiff's

shoulder impairment and pain fail to demonstrate otherwise.  *See* AR 78 (citing AR 496 (March

2019 follow-up with cardiologist); AR 613 (January 2020 follow-up with cardiologist); AR 301

(January 2019 visit to primary care physician for headache); AR 311 (October 2018 visit to

primary care physician for rash); *see also Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017)

(improper for ALJ to "cherry-pick" from medical evidence as opposed to undertaking a "broader

development" of the evidence in its entirety).

Moreover, the ALJ's reliance on NP Kwan's May 2020 visit notes is misplaced.  AR 796.

NP Kwan's May 2020 findings and opinions actually lend support to Dr. Sackett's RFC opinion

and reflect the same pattern to Plaintiff's shoulder impairment and symptoms observed and

documented by Dr. Sackett over the years.

As of May 2020, Plaintiff had been receiving treatment at the Spine Center for nearly five

months for shoulder pain, including from NP Kwan with whom she had established a treating

relationship.  AR 816, 796.  NP Kwan reported that Plaintiff had been experiencing pain in her

shoulder since 2009, and that "[t]he impact of pain ha[d] been significant on her physical and

emotional life."  AR 795.  He stated that Plaintiff had tried physical therapy, acupuncture,

cortisone injections, and exercise, and that she subsequently sought care from the Spine Center to

"explore different treatment options."  AR 795, 796, 816.  NP Kwan noted that Plaintiff reported

some improvement in her pain.  AR 795.  He explained that Plaintiff had recently completed a

functional restoration program ("FRP") with the Spine Center and that she reported feeling a

"reduction in pain as well as improvements in strength and ROM [range of motion] and overall

---

[5] The ALJ also found the nearly identical RFC opinions of NP Kwan and Dr. Siqueiros "less
persuasive."  AR 78-79.  Plaintiff, however, did not challenge the ALJ's rejection of those
opinions.  *See* Pl. Mot. Summ. J. at 7-11.  Nevertheless, the persuasiveness of those opinions is
relevant to the Court's analysis of whether the longitudinal medical evidence supports Dr. Sackett's
opinion.  Accordingly, the Court notes that, for the same reasons that the longitudinal record
supports Dr. Sackett's RFC opinion, it similarly supports the nearly identical opinions of NP Kwan
and Dr. Siqueiros.

United States District Court
Northern District of California

1  functional tolerance."[6]  AR 795.

2      However, the improvement was limited, and Plaintiff also reported in May 2020 that her

3  pain remained a "6/10" and that she continued to experience pain, including "burning, tingling,

4  numbness, pinprick, tightness, [and] spasms" in her right shoulder and right arm caused by

5  "[m]oderate to severe rotator cuff tendinosis with near full thickness articular surface tear."  AR

6  796, 797.  NP Kwan further observed that Plaintiff was engaged in "muscle guarding . . . along the

7  cervical paraspinal and trapezius muscle groups bilaterally."  AR 796.

8      NP Kwan also noted that Plaintiff stated she was interested in returning to work, but that

9  her options were limited given the "stringent work restrictions."  AR 797.  NP Kwan ultimately

10  reiterated the same work restrictions as those stated by Dr. Sackett in her RFC opinion, further

11  adding that Plaintiff should do no work above the shoulder level.[7]  AR 796.

12      In sum, Plaintiff's shoulder impairment and related symptoms waxed and waned over time

13  depending on her level of work activity.  That there was occasional, temporary improvement to

14  Plaintiff's condition did not undermine the disabling nature of Plaintiff's injury, which had

15  fluctuated over time.  *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (ALJ may not

16  simply "pick out a few isolated instances of improvement over a period of months or years" but

17  must interpret "reports of 'improvement' . . .  with an understanding of the patient's overall well-

18  being and the nature of her symptoms.");  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir.

19  2014)(ALJ should take "holistic review of the record" in evaluating medical opinions).  Nor did

20  any temporary improvement undermine Dr. Sackett's RFC opinion.

21      Because Dr. Sackett's RFC opinion was internally consistent, supportable, and consistent

22

23  [6] In addition to the FRP, as of May 2020, Plaintiff had been off work for more than one year, and

24  based on the pattern reflected by her longitudinal records, some improvement would have likely
    been expected based on her time off work as well.  *See* AR 359.

25  [7] The ALJ's final two citations were to Plaintiff's June 2019 and May 2020 visits to her primary

26  care physician, Dr. Siqueiros, to "get labs" and for routine blood pressure checks.  AR 78 (citing
    AR 520-21, 765-67).  Progress notes for both of those visits state that Plaintiff's motor "strength"

27  or "power" was "5/5."  AR 520, 767.  The ALJ, however, failed to explain how the two
    observations regarding Plaintiff's extremity strength on those two occasions undermined the

28  limitations related to Plaintiff's shoulder and rotator cuff injury.

United States District Court
Northern District of California

with the record, the ALJ's determination that it was "unpersuasive" based on the specific records cited and the overall longitudinal medical record was not supported by substantial evidence. *See* 20 C.F.R. § 416.920c(c)(1) & (2).

### 2.    State Agency Medical Consultant Dr. Rudito's Opinion

Nor did state agency consulting physician Dr. Rudito's opinion, which the ALJ found to be persuasive, render Dr. Sackett's RFC opinion any less supportable or consistent with the record.[8]

Contrary to Dr. Sackett's RFC opinion, Dr. Rudito's assessment offers very little explanation or reasoning in support of his conclusions regarding Plaintiff's functional limitations. The only explanation Dr. Rudito proffered for rejecting the more restrictive limitations in Dr. Sackett's RFC opinion, was: "this is not persuasive not supported by min exam findings."  AR 64. Furthermore, when asked to "[e]xplain manipulative limitations and how and why the evidence supported [Dr. Rudito's] conclusions [with] specific facts upon which your conclusions are based (includ[ing] the extent to which the function can be performed)," Dr. Rudito simply noted "torn rotator cuff, limit OHR to occ RUE," with no further explanation.  AR 64.  It is therefore unclear to the Court how the ALJ determined that Dr. Rudito's opinion was "well-explained," "strongly supported," and indeed more "supportable," than Dr. Sackett's opinion. *See* 20 C.F.R. §§ 404.1520(c)(1); 416.920c(c)(1) (under the supportability factor, more weight is generally accorded to medical opinions that are supported by "relevant medical evidence" and the medical source's explanation).

By contrast, Dr. Sackett's RFC opinion was supportable for all of the reasons already stated above.  It was based on Dr. Sackett's own observations, clinical findings, and examinations that progressed over the course of years, in addition to Plaintiff's overall medical record, including, in particular, the opinions of the three orthopedists. *See* 20 C.F.R. § 416.920c(c)(1).

Dr. Rudito's opinion was also less consistent with the longitudinal record than Dr. Sackett's

---

[8]State agency consulting physician Dr. Lauderman also reviewed Plaintiff's medical records.  AR 47-50.  However, the ALJ found Dr. Lauderman's opinion only partially persuasive and ultimately adopted state agency consulting physician Dr. Rudito's subsequent RFC opinion as Plaintiff's RFC.  AR 77-78.  Accordingly, the Court focuses primarily on Dr. Rudito's opinion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    RFC opinion, and the ALJ erred in concluding otherwise. *See* 20 C.F.R. § 416.920c(c)(2).  In

2    finding that Dr. Rudito's opinion was consistent with the other "diagnostic and clinical evidence,"

3    the ALJ relied on exactly the same record evidence that the ALJ cited as support for discounting

4    Dr. Sackett's opinion. *See* AR 77 (citing AR 285-87, 301, 311, 496, 526-21, 613, 767, 797-98).

5    However, as discussed above, the records cited by the ALJ and the longitudinal medical evidence

6    did not demonstrate that Plaintiff's shoulder impairment had improved such that Dr. Sackett's work

7    restrictions were no longer supported or necessary.  Instead, the medical evidence revealed that

8    Plaintiff's symptoms improved during periods of time when she was either not working or on a

9    modified work plan. *See, e.g.,* AR 359.  Thus, the ALJ erred in concluding that evidence of

10   temporary improvement supported the adoption of Dr. Rudito's opinion and the rejection of Dr.

11   Sackett's opinion. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating

12   symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a

13   few isolated instances of improvement over a period of months or years and to treat them as a

14   basis for concluding a claimant is capable of working.");  *see also Attmore v. Colvin*, 827 F.3d

15   872, 877 (9th Cir. 2016) (holding that the ALJ "must interpret reports of improvement . . . with an

16   understanding of the patient's overall well-being and the nature of her symptoms").

17        Plaintiff's conservative treatment did not undermine Dr. Sackett's RFC opinion; nor did it

18   support the relaxed functional limitations included in Dr. Rudito's opinion.  Two out of three

19   orthopedists, Drs. Masters and Bui, recommended conservative treatment with physical therapy,

20   and the third orthopedist, Dr. Damore, recommended surgery in 2018.  AR 286, 323, 325.

21   Plaintiff, however, chose to continue with "conservative" treatment, including cortisone injections,

22   acupuncture, physical therapy, a home exercise program, and alternative treatment methods with

23   the Spine Center. *See* AR 322, 795.

24        While Plaintiff elected conservative treatment, there is no suggestion that she failed to

25   follow any of the treatment prescribed. *See* 20 C.F.R. §§ 404.1530, 416.930 (noting that order to

26   receive disability benefits, a claimant must follow treatment prescribed by her physician if the

27   treatment can restore her ability to work); *see also Aguirre v. Astrue*, No. ED CV 08-1176PLA,

28   2009 WL 3346741, at *5 (C.D. Cal. Oct. 14, 2009) (An ALJ may not "deny benefits on the basis

1    of declined surgery, when surgery is only a *suggested* rather than a *prescribed* course of

2    treatment."); *Young v. Califano*, 633 F.2d 469, 472–73 (6th Cir. 1980) (unwillingness to undergo a

3    suggested surgery does not constitute failure to follow prescribed treatment).   The record instead

4    demonstrates that Plaintiff was diligent in pursuing treatment for her shoulder impairment and

5    symptoms over the years, including in 2019-2020 from the Spine Center. *See* AR 286, 383, 795-

6    96, 816.

7           Nor did Plaintiff's daily activities – including her completion of household chores, physical

8    therapy, and exercise – undermine Dr. Sackett's RFC opinion.  The Ninth Circuit has "repeatedly

9    warned that ALJs must be especially cautious in concluding that daily activities are inconsistent

10   with testimony about pain, because impairments that would unquestionably preclude work and all

11   the pressures of a workplace environment will often be consistent with doing more than merely

12   resting in bed all day." *Garrison*, 759 F.3d at 1016.

13          For these reasons, the ALJ's determination that Dr. Rudito's opinion was more persuasive

14   than that of Dr. Sackett was not supported by substantial evidence.  At a minimum, Dr. Sackett's

15   opinion was at least as supportable and consistent with the record as Dr. Rudito's opinion.

16   Accordingly, the ALJ should have considered the remaining three factors listed in the 2017

17   regulations – the treatment relationship, specialization, and any "other factors."  20 C.F.R. §§

18   404.1520c(b)(3), 416.920c(b)(3) (ALJ should articulate how they considered factors other than

19   supportability and consistency, including the treatment relationship, when they find two or more

20   medical opinions about the same issue equally well-supported and consistent with the record);

21   *accord Woods,* 2022 WL 1195334, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3))

22   (noting that when "'two or more medical opinions . . . about the same issue are . . . equally well

23   supported . . . and consistent with the record. . . but are not exactly the same,' . . . the ALJ 'will

24   articulate how [the agency] considered the other most persuasive factors'").

25          The Court therefore remands to the Commissioner on this issue so that the ALJ may

26   consider the additional factors.  In assessing the physicians' treatment relationships, the Court

27   notes that the ALJ is required to consider the length, frequency, purpose, nature, and extent of the

28   treating relationship. *See* 20 C.F.R. § 404.1520c(c)(3)(i)-(v); *Woods,* 2022 WL 1195334, at *6;

United States District Court
Northern District of California

see also *Derek M. v.Comm'r of Soc. Sec.*, No. 3:20-cv-01713-AC, 2022 WL 443980 at *9 (D. Or. February 14, 2022) (treating physician's frequent appointments and relationship with claimant should have made the opinion more persuasive under 20 C.F.R. § 404.1520c(c)(3)).

### B.       Issue Two:  ALJ's Consideration of Plaintiff's Daughter's Testimony

In February 2019, approximately one year prior to the hearing, Plaintiff's daughter, P.P., submitted a third-party function report on behalf of Plaintiff, testifying that Plaintiff's impairments impacted her work to a "great extent," because she would come home from work "exhausted and in pain" for the rest of the day.  AR 234.  P.P. also stated that her mother's impairments impacted her ability to lift, concentrate, reach, sit, climb stairs, concentrate, and use her hands.  AR 239. The ALJ acknowledged P.P.'s testimony, stating simply that she had "fully considered the third-party function report."  AR 75.

Plaintiff contends that the ALJ erred in failing to fully discuss P.P.'s testimony or explain how she considered the specific testimony.  The Commissioner responds that the 2017 regulations no longer require an ALJ to specify how the ALJ considered evidence from nonmedical sources. Alternatively, the Commissioner argues that the reasons the ALJ proffered for discounting Plaintiff's testimony apply to P.P.'s testimony.

The 2017 regulations adjusted requirements for an ALJs' consideration of nonmedical evidence, and the Ninth Circuit has not yet addressed whether the "germane reasons" requirement for discounting lay witness testimony survives the enactment of the new regulations.  20 C.F.R. §§ 404.1520c(d), 416.920c(d); *see also Caleb H. v. Saul*, No. 4:20-cv-5006-EFS, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020) ("[T]he ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony."); *Mary M. v. Kijakazi*, No. 20-CV-1457-AGS, 2022 WL 891445, at *6 (S.D. Cal. Mar. 25, 2022) (holding that that ALJs are not required to articulate specific reasons for their findings about the persuasiveness of nonmedical source testimony, but instead must simply show that they considered such evidence in deciding the claim); *but see Joseph M.R. v. Comm'r of Soc. Sec.*, 3:18-cv-01779, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) ("Although § 404.1520c(d) states the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does

United States District Court
Northern District of California

1    not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his

2    reasons for discounting those statements.").

3            The Court need not resolve the applicable standard, though, because even assuming that

4    the ALJ was still required to provide germane reasons, her failure to do so in this case was

5    harmless.  *See, e.g., Madison L. v. Kijakazi*, 20-cv-06417-TSH, 2021 WL 3885949, at *4 (N.D.

6    Cal. Aug. 31, 2021) (concluding that court need not resolve issue regarding the standard); *accord*

7    *Thomas v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01787-PHX-MTL, 2022 WL 292547, at *7

8    (D. Ariz. Feb. 1, 2022).  Where a lay witness' testimony is similar to the claimant's own testimony

9    regarding her subjective complaints, the ALJ's reasons given to reject the claimant's testimony are

10   deemed sufficiently germane reasons to reject the lay witness testimony.  *See Valentine v. Comm'r*

11   *of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ

12   provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and

13   because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also

14   gave germane reasons for rejecting her testimony.");  *see also Molina v. Astrue*, 674 F.3d 1104,

15   1111, 1122 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) (finding an

16   ALJ's failure to address a nonmedical source at all harmless where ALJ addressed claimant's

17   similar testimony); *accord Caleb H*, 2020 WL 7680556, at *8.

18           Here, the Commissioner accurately notes that P.P.'s testimony was duplicative of Plaintiff's

19   own testimony.  *See* AR 296-302 (Plaintiff's Adult Function Report).  The ALJ provided several

20   reasons for discounting Plaintiff's testimony as "not fully consistent with the intensity, persistence,

21   and limiting effects" she alleged, which Plaintiff has not challenged on appeal.  AR 75-77.  These

22   reasons included inconsistencies between Plaintiff's testimony and the medical evidence,

23   especially as concerned Plaintiff's cardiac impairments, and they are "germane" and apply equally

24   to P.P.'s testimony.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1219 (9th Cir. 2005) (holding that an

25   inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay

26   witness); *see also Mary M.*, 2022 WL 891445, at *6 (holding that reasons proffered for rejecting a

27   claimant's testimony applied equally to her husband's testimony even though the ALJ had not

28   articulated any reasons regarding discounting of husband's testimony); *accord Madison L.*, 2021

1    WL 3885949, at *4 (concluding that ALJ's reasons for rejecting claimant's testimony also

2    provided sufficient reasons for rejecting claimant's mother's testimony where the mother did not

3    testify to any limitations beyond those testified to by the claimant herself).

4            For these reasons, the ALJ did not err in her treatment of P.P.'s testimony.

5        **C.       Issue Three:   Constitutional Claim**

6            Finally, Plaintiff argues that she is entitled to a new hearing before a new ALJ because the

7    ALJ's delegation of authority came from the Commissioner, whose appointment was

8    constitutionally defective pursuant to United States Supreme Court precedent.  *See Seila Law LLC*,

9    140 S. Ct. at 2197 (holding that the Consumer Financial Protection Bureau's ("CFPB") removal

10   structure, which allowed for the CFPB director to be removed by the President of the United

11   States only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3),

12   violated the separation of powers by insulating the director from removal by the President).

13           The pertinent removal statute here, 42 U.S.C. § 902(a)(3), limits the President's authority

14   to remove the Commissioner, and violates the separation of powers to the extent it prohibits the

15   President from removing the Commissioner without cause.  *See Collins v. Yellen*, 141 S. Ct. 1761,

16   1783 (2021) (concluding that a provision limiting the President to a removal of the Federal

17   Housing Finance Agency ("FHFA") director for cause violated the separation of powers for the

18   same reasons set forth in *Seila*); *see also Jason V. v. Comm'r Soc. Sec.,* No. C21-5227-SKV, 2022

19   WL 575703, at *5 (W.D. Wash. February 25, 2022) (noting that 42 U.S.C § 902(a)(3) suffers from

20   the same defect as the removal provisions in *Seila* and *Collins*).  However, to obtain rehearing or

21   relief, Plaintiff is required to demonstrate harm, and that harm may not be based exclusively on the

22   existence of the unconstitutional removal clause, 42 U.S.C. § 902(a)(3).  *See Collins*, 141 S. Ct. at

23   1787-88 (holding that a removal procedure that violates the separation of powers does not

24   automatically render void all actions taken by the director).

25           Here, Plaintiff has failed to demonstrate a link between the denial of her claim and the

26   unconstitutional removal provision  because the unconstitutional removal provision, 42 U.S.C §

27   902(a)(3), was severable and did not undermine the authority of the Commissioner and the SSA to

28   function.  *See Seila Law*, 140 S. Ct. at 2209 ("The provisions of the Dodd-Frank Act bearing on

United States District Court
Northern District of California

the CFPB's structure and duties remain fully operative without the offending tenure restriction."). Moreover, the ALJ here, like all ALJs in social security appeals, was performing an adjudicative function, and the role of district courts in reviewing social security appeals further "precludes any possibility that the statutory removal provision causes claimants [like Plaintiff] any harm." *Sean E. M. v. Kijakazi*, No. 20-CV-07295-SK, 2022 WL 267406, at *5 (N.D. Cal. Jan. 28, 2022); *see also Cindy S. v. Comm'r of Soc. Sec.*, No. C21-5642-MLP, 2022 WL 523011, at *4–8 (W.D. Wash. Feb. 22, 2022) (citing *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021)) (holding no harm where Department of Labor ("DOL") ALJs adjudicated claims under the Black Lung Benefits Act and performed "purely adjudicative function[s]").

Accordingly, while the removal clause in 42 U.S.C § 902(a)(3) violates the separation of powers, it does not automatically cause harm to Plaintiff; nor does the Commissioner's delegation of authority to the ALJ automatically harm Plaintiff.  Rather, the basis for the Court's determination to reverse the Commissioner's final decision is the Court's independent review of the administrative record and the ALJ's decision, and the Court's conclusion that the ALJ erred by discounting the opinion of treating physician, Dr. Sackett, for the reasons set forth above.

## V.      CONCLUSION AND DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

It is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Therefore, remand is appropriate.  However, because there is no evidence of bias, substantial delay, or other reason for disqualification, Plaintiff's request for

1    remand to a different ALJ is DENIED.  *See, e.g., Penoza v. Berryhill*, 738 Fed. Appx. 435, 436

2    (9th Cir. 2018) (affirming district court's denial of claimant's request for a new ALJ); *see also*

3    *Moreland v. Barnhart*, C 00–01420 MMC, 2002 WL 654095, (N.D. Cal. Apr.16, 2002) (declining

4    to remand case to a different ALJ).  On remand, the ALJ must properly reconsider Drs. Sackett's

5    and Rudito's RFC opinions as discussed above based on the additional three factors for evaluating

6    medical evidence, and the guidance provided in this opinion.  *See* 20 C.F.R. § 416.920c(a)-(c)

7    (requiring ALJs to evaluate equally persuasive opinions on the basis of the provider's relationship

8    with the claimant, specialization, and "other factors," in addition to supportability and

9    consistency).  It is not the Court's intent to limit the scope of the remand.

10          For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

11   Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary

12   judgment, and REMANDS this case for further proceedings.

13          **SO ORDERED.**

14   Dated:  April 29, 2022                              \

15

16                                                       _____

17                                                       SUSAN VAN KEULEN
                                                         United States Magistrate Judge

*United States District Court*
*Northern District of California*